People v Hernandez (2025 NY Slip Op 05874)

People v Hernandez

2025 NY Slip Op 05874

Decided on October 23, 2025

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 23, 2025

No. 81 

[*1]The People & c., Respondent,
v
Rosemary Hernandez, Appellant.

Allison Haupt, for appellant.
Brian Witthuhn, for respondent.

RIVERA, J.:
The two issues on appeal concern defendant Rosemary Hernandez's sentence imposed under the Domestic Violence Survivors Justice Act (DVSJA), an alternative sentencing scheme, following her guilty plea to second-degree murder. Defendant's claim that her sentence is illegal because the court imposed a term of five years' post-release supervision (PRS) is meritless. The Penal Law mandates that a court impose a five-year PRS term whenever a defendant is convicted of second-degree murder, a class A-I felony, and sentenced under the DVSJA to a determinate term of incarceration, as defendant was here. Defendant's separate assertion that her appeal waiver is invalid is also meritless, and accordingly, the Appellate Division did not err when it held that the waiver barred consideration of her excessive sentence claim. We therefore affirm.
I.
Defendant was charged with murder in the second degree and other offenses. Based on the charges, she faced a minimum indeterminate sentence of 15 years' to life incarceration if convicted at trial (see Penal Law § 70.00 [2] [a]; [3] [a] [i]). However, after negotiations, the prosecution recommended that defendant plead guilty to second-degree murder in exchange for sentencing under the DVSJA to 10 years' incarceration and five years' PRS, and a waiver of her right to appeal. Supreme Court concluded based on defendant's submissions, as well as the prosecution's and defense counsel's statements on the record, that it would have found defendant entitled to such a [*2]sentence under the DVSJA had it held an evidentiary hearing, and it therefore agreed to impose the recommended sentence.
During the plea colloquy, the court explained that as a condition of her guilty plea, defendant was being asked to waive her separate and independent right to appeal. Defendant responded that she understood, and after conferring with counsel, she also executed a written appeal waiver. She then admitted guilt to second-degree murder.
On appeal to the Appellate Division, defendant argued that the five-year PRS term is illegal, because the Penal Law does not permit a court to impose PRS on a defendant convicted of a class A felony and sentenced under the DVSJA. Defendant further argued that her sentence is unduly harsh and severe, and that the Appellate Division could consider this claim because her appeal waiver is invalid. The Appellate Division affirmed the judgment, concluding, as an initial matter, that defendant's appeal waiver is valid (224 AD3d 415, 416 [1st Dept 2024]). The Court next held that, although the appeal waiver did not preclude defendant's challenge to the legality of her sentence, the relevant DVSJA and Penal Law provisions did not bar imposition of the five-year PRS term (id.). The Court also held that defendant's valid appeal waiver foreclosed review of her excessive sentence claim but, "in any event," there was no basis to reduce her sentence (id.). A Judge of this Court granted defendant leave to appeal (42 NY3d 938 [2024]).
Defendant now repeats her challenges to the legality of her sentence and the validity of her appeal waiver. We agree with the Appellate Division that those claims are without merit, and we therefore affirm.
A.
Legality of Defendant's Sentence
Defendant does not challenge the carceral component of her sentence. Instead, she asserts that the court had no statutory authority to impose five years' PRS on a defendant convicted of a class A felony and sentenced under the DVSJA. We may review defendant's claim that her sentence is illegal even though, as we explain, her appeal waiver is valid (see People v Seaberg, 74 NY2d 1, 9 [1989] ["a defendant may not waive the right to challenge the legality of a sentence"]). However, defendant misinterprets the statutory scheme, and her claim boils down to a policy argument best suited for the legislature, not the judiciary.
When we interpret a statute, our " 'primary consideration' . . . is to 'ascertain and give effect to the intention of the Legislature' " (People v Galindo, 38 NY3d 199, 203 [2022], quoting Riley v County of Broome, 95 NY2d 455, 463 [2000]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must be the language itself, giving effect to the plain meaning thereof" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). Moreover, "[i]t is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other" (People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]).
"The Legislature enacted the DVSJA in recognition of the 'national epidemic' of domestic violence and the failure of prior law to 'allow judges discretion to fully consider the impact of domestic violence' in making sentencing determinations" (People v Brenda WW., —NY3d —, —, 2025 NY Slip Op 03643, *2 [2025], quoting Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6). The DVSJA "permits courts to sentence defendants to an alternative, less severe sentence if the defendant was a victim of domestic violence and convicted of certain eligible offenses" (id.).
Penal Law § 60.12, as amended by the DVSJA, provides in relevant part that "[n]otwithstanding any other provision of law, where a court is imposing sentence upon a person pursuant to [PL § 70.00] . . . and is authorized or required . . . to impose a sentence of imprisonment, the court, upon a determination [that the person qualifies for DVSJA sentencing] may instead impose a sentence in accordance with this section" (Penal Law § 60.12 [1]). In turn, Penal Law § 60.12 (3) states that "[w]here a court would otherwise be required to impose a sentence for a class A felony offense pursuant to [Penal Law § 70.00], the court may fix a determinate term of imprisonment of at least five years and not to exceed fifteen years." By its plain text, Penal Law § 60.12 does not reference PRS or expressly prohibit courts from imposing a period of PRS in addition to a term of incarceration. It only reduces the period of incarceration a court may impose on defendants eligible for DVSJA sentencing, based on class of felony. Here, Penal Law § 60.12 (3) permitted the court to sentence defendant to a determinate term of incarceration of between five and 15 years based on her conviction of a class A-I felony.
A separate section, Penal Law § 70.45, governs PRS. That section requires that "[w]hen a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article" (Penal Law § 70.45 [1]). Under Penal Law § 70.45 (2), "[t]he period of post-release supervision for a determinate sentence, other than a determinate sentence imposed for a felony sex offense as defined in [Penal Law § 70.80 (1) (a)], shall be five years," unless the offense of conviction falls within one of six enumerated categories based on its severity, in which case the court must impose a shorter PRS term. The six enumerated categories, by express reference, include defendants convicted of class B, C, D, and E felonies and sentenced under PL § 60.12, as amended by the DVSJA. For example, a defendant convicted of a class B violent felony and sentenced under the DVSJA to a determinate term of incarceration must receive between 2½ and five years' PRS (see Penal Law § 70.45 [2] [f]). Since none of the six categories encompass class A-I felonies, the five-year default PRS term applies to defendant's conviction of second-degree murder. The court therefore imposed a lawful sentence under the applicable statutes.
Contrary to defendant's assertion, the "notwithstanding" prefatory clause in Penal Law § 60.12 (1) does not change the analysis. We reject defendant's argument that it precludes a court from imposing PRS on a defendant sentenced under the DVSJA to a class A felony because Penal Law § 60.12 (3) does not expressly authorize it to do so. The "notwithstanding" clause merely ensures that Penal Law § 60.12's sentencing rules preempt conflicting provisions in any other statute (see People v Mitchell, 15 NY3d 93, 96-97 [2010] [explaining that the phrase "notwithstanding any provision of law to the contrary" is "the verbal formulation frequently employed for legislative directives intended to preempt any other potentially conflicting statute, wherever found in the State's laws"]). But Penal Law § 60.12 and Penal Law § 70.45 do not conflict. Penal Law § 60.12 controls the length of a DVSJA-eligible defendant's term of incarceration, while Penal Law § 70.45 directs that a court order "an additional period of post-release supervision" on any determinate sentence of incarceration. Penal Law § 60.12 therefore does not preclude a court from imposing PRS. Instead, these sections work in tandem to achieve the legislative design of setting both a period of incarceration and supervision upon release, each directly related to the class of crime for which a defendant is convicted.
The legislative history of the DVSJA supports our straightforward reading of the Penal Law, and our conclusion that the legislature only intended to give judges discretion to reduce the periods of incarceration for certain defendants who are domestic violence survivors, not to wholly eliminate PRS in such cases (see e.g. Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6 [stating that the DVSJA would ameliorate the problem of "long, unfair prison sentences for many survivors (of domestic violence)" by "allowing judges to sentence survivors to alternative sentences of imprisonment including determinate sentences"]).
Defendant's argument that the legislature intended to "frontload" punishment of DVSJA-eligible defendants convicted of serious offenses like second-degree murder by imposing longer terms of incarceration but shorter terms of PRS, as compared to defendants convicted of less serious offenses, is not supported by the statutory framework. Indeed, defendants generally face higher maximum terms of incarceration (see Penal Law § 60.12), and wider ranges of PRS (see Penal Law § 70.45 [2]), the more serious their offense of conviction. For example, a defendant sentenced under Penal Law § 60.12 on a class E violent felony faces up to 1½ years' incarceration and between 1½ and three years' PRS (see Penal Law § 60.12 [2] [d]; 70.45 [2] [e]). By contrast, a defendant sentenced on a class C violent felony faces up to 3½ years' incarceration and between 2½ and five years' PRS (Penal Law § 60.12 [2] [b]; 70.45 [2] [f]). Defendant's argument entirely relies on the fact that Penal Law § 70.45 does not expressly state a PRS term for defendants sentenced under the DVSJA on a class A-I felony, and that such defendants face higher maximum sentences than defendants sentenced under the DVSJA to less severe felonies. However, as explained above, since the default rule of five years' PRS applies to defendants sentenced under the DVSJA to class A felonies, there was no need for Penal Law § 70.45 to expressly reference them. Consequently, Penal Law §§ 60.12 and 70.45 do not reflect a legislative intent to "frontload" punishment through lengthier terms of incarceration and shorter terms of PRS for defendants sentenced under the DVSJA to the most severe crimes.
Finally, defendant's argument that PRS undermines successful reentry for defendants sentenced under the DVSJA is a policy consideration for the legislature (see People v Jones, 26 NY3d 730, 741 [2016] ["These policy determinations are beyond our authority and instead best left for the legislature"]; People v Francis, 30 NY3d 737, 751 [2018] ["The constitutional principle of separation of powers . . . requires that the Legislature make the critical policy decisions"] [internal quotation marks omitted]).
In sum, defendant's proposed reading of Penal Law § 60.12 ignores well-settled rules of statutory interpretation and rests on speculative claims of legislative intent belied by the statutory framework. Thus, defendant's sentence is not illegal.
B.
Validity of Defendant's Appeal Waiver
Defendant separately argues that her appeal waiver is invalid because the court misrepresented which claims would survive it and, consequently, it did not preclude her claim to the Appellate Division that her 10-year term of incarceration is unduly harsh and severe. An appeal waiver is valid when "the record demonstrates that it was made knowingly, intelligently, and voluntarily" (People v Lopez, 6 NY3d 248, 256 [2006]). The court does not have to engage in any "particular litany" to ensure that an appeal waiver is knowing, intelligent, and voluntary, but it must ensure that the terms and conditions of an appeal waiver, and a defendant's understanding of them, are "apparent on the face of the record" (People v Callahan, 80 NY2d 273, 280-283 [1992]). Moreover, a court cannot "mischaracterize" the "rights encompassed by an appeal waiver" (People v Bisono, 36 NY3d 1013, 1017 [2020]).
Here, the court specifically advised defendant that certain issues would survive the waiver, and counsel confirmed that they had reviewed those issues with defendant. The written waiver further clarified that, as explained in defendant's conversation with the court and counsel, defendant was waiving any claim that her sentence is excessive. Under these circumstances, the Appellate Division properly concluded that defendant knowingly, intelligently and voluntarily waived her excessive sentence claim.
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed. Opinion by Judge Rivera. Chief Judge Wilson and Judges Garcia, Singas, Cannataro, Troutman and Halligan concur.
Decided October 23, 2025